UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANDREW T. WHITCOMB,

                      Plaintiff,

v.                                                   Case No. 16-cv-1000-pp

DR. JEFFREY MANLOVE, *et al.*,

                      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 5), SCREENING PLAINTIFF'S COMPLAINT, AND DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights relating to the medical treatment he received at Waupun Correctional Institution (WCI). Dkt. No. 1. He later filed a motion for leave to proceed without prepayment of the filing fee, dkt. no. 5, and a copy of his prisoner trust account statement, dkt. no. 6. This order resolves his motion and screens his complaint.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the case filing fee, as long as he meets certain

1

conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b).

On August 15, 2016, the court ordered the plaintiff to pay an initial partial filing fee of $1.44. Dkt. No. 7. When the plaintiff did not pay that fee, the court entered an order to show cause, dkt. no. 8, and ultimately an order allowing the plaintiff to pay the initial partial filing fee from his release account, dkt. no. 11. The court received the initial partial filing fee on January 3, 2017. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and will require the plaintiff to pay the remainder of the filing fee over time as set forth at the end of this decision.

## II. Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous, malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. The Plaintiff's Allegations

The plaintiff has sued the following defendants: Dr. Manlove, Stadmueller-HSU manager, Nurse Gunderson, Nurse Gwendolyn, Nurse Cartier, Nurse Gail, Nurse Slinger, Nurse Howell, Nurse Larson, Nurse Jenson, William Pollard, Brian Foster, and John/Jane Does 1-5. Dkt. No. 1 at 1.

On November 10, 2015, the plaintiff was on his way back to his cell hall from recreation when he felt his left knee buckle, pop out of place and tear. Dkt. No. 1 at 3. The plaintiff was taken to the Health Services Unit (HSU), where Nurse Jenson looked at his knee. Id. Nurse Jenson sent him back to his cell with a brace and crutches. Id. at 3-4.

The plaintiff saw a doctor on December 2, 2015; the doctor ordered an MRI of the plaintiff's left knee. Id. at 4. Around December 7, 2015, the plaintiff wrote to the HSU asking if his MRI had been ordered or scheduled. Id. He received a response the next day that the MRI was being scheduled "per order written 12-2-15." Id. Three weeks passed; on December 23, 2015, the plaintiff

3

again wrote to the HSU and said, "can you please tell me if my MRI has been scheduled yet, is scheduled for sometime in January?" Id.

By January 4, 2016, the plaintiff still had not been seen or received proper treatment, so he submitted another health service request asking when he would be seen. Id. He explained that his knee was getting worse, and that the pain was unbearable. Id. The next day, the plaintiff received a response "saying this month." Id.

The plaintiff was taken to Waupun Memorial Hospital on January 14, 2016 for the MRI. Id. He waited three days, then wrote to the HSU to ask about the results. Id. The HSU wrote back: "MRI L. Knee; complete tear of ACL graft, no meniscal tear or cartilage defect, post op appearance of petteal [sp?] tendon." Id. The plaintiff wrote to the HSU again, asking about the results of the tests, and the HSU responded on January 19, 2016: "you will be seen by doctor grossman, HSU will make the appointment." Id.

The plaintiff became upset about how the HSU was handling his injury and the pain he was suffering while waiting to be seen by the doctor. Id. He wrote to the HSU again on January 20, 2016, asking why it was taking so long to get medical attention when they knew he had a torn ACL. He reiterated that he was in serious pain. Id.

A couple of days later, on January 22, 2016, the plaintiff fell in his cell, and popped the knee out of place again. Id. at 5. "The knee was so badly damaged that the knee would no longer stay in the socket." Id. Nurse Cartier

4

and Dr. Manlove saw the plaintiff in the HSU, and an emergency appointment was made for the plaintiff to see Dr. Grossman. Id.

Five days later, the plaintiff saw Dr. Grossman, an orthopedic surgeon, at Waupun Memorial Hospital. Id. Dr. Grossman checked out the plaintiff's knee and said the plaintiff needed another MRI, as well as surgery on his left knee. Id.

The day after the appointment, the plaintiff wrote to the HSU, demanding to know why he'd been required to sign a form saying that he refused to wear his brace, when in fact he'd said only that he didn't wear it when sleeping or showering. Id. He asserted that he'd received a sleeve, not a brace. He indicated that Dr. Grossman had told him he'd be getting a new, ACL-specific brace (which he didn't yet have), and demanded to know why HSU was trying to make it look like he was refusing help and refusing to follow directions. Id.

The plaintiff wrote the HSU on another date—it's scribbled out in the complaint—and asked to see a doctor as soon as possible because his knee hurt a lot and would not stay in place. Id. The plaintiff said the pain was keeping him up at night, and that he felt that they were refusing him medical attention. Id.

The plaintiff wrote yet another health service request on February 7, 2016—three months after the initial injury—and said that he needed to see the doctor because his pain was getting worse and it was becoming unbearable. Id. Two days later, the plaintiff wrote again, asking whether his MRI was scheduled yet and, if not, why not. Id. It had, by then, been over two weeks

since Dr. Grossman ordered the MRI. Id. The HSU responded on February 10, 2016: "To HSU manager designee, not yet." Id.

On February 19, 2016, the plaintiff wrote to the HSU again. Id. He said: "my knee hurts really bad to the point I can't sleep can I please get something for my pain." Id. The HSU had stopped one pain medication (Gabapentin) and had not given the plaintiff anything else. Id. at 5-6. The HSU's February 24, 2016, response said: "pain begin addressed upcoming tests repeat MRI." Id. at 6.

The plaintiff wrote to the HSU on February 28, 2016, asking what was being done about the fact that he was in severe pain every day and could not sleep because of the pain. Id. He asked to please see the doctor so he could address this with him, indicating he'd talked to a nurse with no result. Id.

On March 23, 2016, the plaintiff asked the HSU if the surgery was scheduled yet. Id. The HSU responded the next day that it was not scheduled yet. Id.

The plaintiff wrote again on April 12, 2016, asking to see a doctor about the pain in his knee. Id. At this point, the plaintiff was seen by a doctor in the HSU; the doctor addressed the pain, as well as the plaintiff's complaint that the doctor and the HSU staff did nothing to help him with his pain and problems. Id.

At some point, the HSU took the plaintiff's wheelchair away, despite the doctor and surgeon saying he should not walk on his knee. Id. The plaintiff was forced to walk on his bad knee with his cane and crutches, which caused him

6

more pain and suffering. Id. Then the HSU took the can and crutches away too, leaving the plaintiff with nothing to help him walk or support him so he would not have to put weight on his bad knee. Id. The plaintiff suffered more pain and further injuries to his bad knee after he had to put pressure on it, but the HSU refused to give him anything to help him walk. Id. The HSU also refused to give the plaintiff medication for his pain and would not let him see a doctor to talk about his pain. Id.

Finally, the plaintiff asserts generally that defendants William Pollard and Brian Foster were put on notice about the plaintiff's problems getting treatment from the HSU. Id. at 6-7. He also says that they had the responsibility to ensure that all of the staff members at the prison do their jobs and provide inmates with proper medical treatment. Id. at 7.

The plaintiff seeks declaratory judgment, $100,000 in compensatory damages, $250,000 in punitive damages and injunctive relief.

The court notes that although the plaintiff's complaint refers to exhibits, the court did not receive any exhibits with the complaint.

B. Analysis

The plaintiff alleges that the defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment, when they were deliberately indifferent to his serious medical need. "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (quoting Rodriguez v.

7

Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009); see also, Estelle v. Gamble, 429 U.S. 97, 103 [1976]). Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. Arnett, 658 F.3d at 750 (citing Estelle, 429 U.S. at 104). A plaintiff claiming that he received deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. Arnett, 658 F.3d at 750 (citing Johnson v. Snyder, 444 F.3d 579, 584 [7th Cir. 2006]). "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." Rodriguez, 577 F.3d at 828 (quoting Estelle, 429 U.S. at 104).

The court finds that the plaintiff certainly has alleged that he had a serious medical need. A torn ACL is a serious injury, and it appears that the plaintiff suffered severe pain from that injury for some five months. He has demonstrated the "objectively serious" element of a deliberate indifference claim.

He also asserts facts that support his claim that someone was deliberately indifferent to that serious medical need. He has described months of effort to get someone to set up MRIs that doctors had ordered. He has described months of trying to get someone to address the pain he was suffering. He has described delays in getting to a surgery ordered by a doctor. He has described the fact that his injury got worse because he was deprived of a wheelchair, then his crutches and cane.

The plaintiff has not, however, given the court enough information about what specific actions each of the people he has named as defendants took to deprive him of his constitutional rights. Although he names them in the caption as defendants, the plaintiff never mentions Stadmueller, Gunderson, Gwendolyn, Gail, Slinger, Howell or Larson anywhere else. He does not identify any actions that they took in relation to the events he describes. He refers frequently to the HSU, but he does not tell the court *who* in the HSU took what actions. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dept. of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). So if the plaintiff wishes to proceed against Stadmueller, Gunderson, Gwendolyn, Gail, Slinger, Howell or Larson, he needs to explain what, exactly, each of them did (or failed to do) to violate his rights. Specifically, the court needs to know who was involved in each decision not to treat the plaintiff, who responded to the plaintiff's health service requests, and who made decisions regarding the plaintiff's healthcare, such as denying the plaintiff pain medication, the wheelchair, and then the cane and crutches. The exhibits the plaintiff mentioned but did not submit may provide some of this information; he might wish to provide those.

The plaintiff mentions Nurse Jenson only once. He says that when he first injured his knee, she looked at it, and sent him back to his cell with

crutches and a brace. If the plaintiff wants to proceed against Jenson, he needs to provide more information about how he believes Jenson violated his rights. The same is true for Manlove and Cartier—the plaintiff says that they saw him on January 22, 2016, and that they made an emergency appointment for him to see Dr. Grossman. Based on this limited information, it sounds like Manlove and Cartier tried to help the plaintiff. If he wants to proceed against him, the plaintiff needs to provide information about how Manlove and Cartier violated his rights.

Finally, the plaintiff says that Pollard and Foster were aware of the struggles he had to get treatment. But he has not explained whether he contacted Pollard or Foster, or how he did so, or whether they responded. The court needs that information to determine whether they actually were on notice about the problems the plaintiff was having regarding medical care for his knee. Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's." Burks, 555 F.3d at 596; see George v. Smith, 507 F.3d 605, 609 (7th Cir.2007). Section 1983 does not allow a plaintiff to hold a defendant liable solely on the basis of the plaintiff's supervisory role. T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010); Palmer v. Marion Cty., 327 F.3d 594 (7th Cir. 2003). In order to be liable, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

If the plaintiff wants to proceed, he must file an amended complaint that contains the information described in this order. The court is sending the

10

plaintiff a complaint form. He needs to write the word "Amended" next to the word "Complaint" at the top of the first page. He must put the case number for this case—16-cv-1000-in the field for "case number." He must list in the caption every defendant against whom he still wants to proceed. In the body of the complaint, he must provide a short description of what each of those defendants personally did or did not do to violate his rights. The amended complaint must be complete in itself—the plaintiff cannot say, "See my first complaint for details." The amended complaint takes the place of the prior complaints and must be complete in itself without referring to or relying on the prior complaints. See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056-57 (7th Cir. 1998).

The court will give the plaintiff a deadline of the end of the day on **June 15, 2018** to file his amended complaint. If the plaintiff does not file an amended complaint by the deadline, the court will assume that he no longer wishes to prosecute the case, and will dismiss it based on his failure to diligently pursue it. See Civil L.R. 41(c). If, based on the court's explanation above, the plaintiff no longer believes that he states a claim against any of the defendants, he does not need to take any further action. If the plaintiff files an amended complaint, the court will screen it under 28 U.S.C. §1915A.

### III. Conclusion

If the plaintiff wishes to proceed with this case, the court **ORDERS** that the plaintiff shall file an amended complaint—one that provides the information described in this order—in time for the court to receive it by the end of the day

on **June 15, 2018**. If the court does not receive the amended complaint by the end of the day on June 15, 2018, the court will dismiss the case based on the plaintiff's failure to diligently pursue it.

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 5.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $348.56 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). Please identify the payments by the case name and number.

The court also **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. If the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the plaintiff is confined.

Dated in Milwaukee, Wisconsin this 14th day of May, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**