UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANDREW T. WHITCOMB,

        Plaintiff,

v.                                      Case No. 16-cv-1000-pp

DR. JEFFREY MANLOVE, *et al.*,

        Defendants.

**ORDER SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 20) AND ORDERING DEFENDANTS TO RESPOND TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 21)**

The plaintiff, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. The court issued an order screening the complaint and found that the plaintiff had not explained how the defendants he sued had violated his rights. Dkt. No. 14. The court gave the plaintiff the opportunity to amend the complaint, and the plaintiff did so. Dkt. No. 20. This decision screens his amended complaint. The plaintiff also has filed a document entitled "Order to Show Cause for A[] Preliminary Injunction." Dkt. No. 21. The court construes this as a motion for a preliminary injunction, and will order the defendants to respond.

**I.    Screening the Plaintiff's Complaint**

    A.    *Federal Screening Standard*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a

1

governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  *The Plaintiff's Allegations*

The plaintiff is an inmate at Waupun Correctional Institution. Dkt. No. 20 at 2. On November 10, 2015, the plaintiff was on his way back to his cell from recreation when his left leg buckled and his knee popped out of place. Id.

2

He felt a very painful tearing sensation. Id. A month later, the plaintiff saw defendant Dr. Manlove, who ordered an MRI of the plaintiff's left knee. Id. The MRI took place on January 14, 2016, and three days later the plaintiff wrote the Health Services Unit ("HSU") asking for the results. Id. The MRI revealed a complete tear of his ACL. Id. On January 20, 2016, the plaintiff asked for something to help him with the severe pain. Id. at 2-3. Manlove did not give him anything. Id. Two days later, the plaintiff fell in his cell, causing further damage to his left knee—so much so that his left knee no longer stayed in the socket. Id. The HS saw the plaintiff and scheduled an emergency appointment with orthopedic surgeon Dr. Grossman; the plaintiff saw Grossman five days later. Id. Grossman said that the plaintiff needed a new MRI and surgery. Id.

On February 7, 2016, the plaintiff wrote HSU and said that his pain continued to get worse and no one gave him anything to help it. Id. Three days later, he wrote to find out if his new MRI or surgery had been scheduled; HSU responded, "not yet." Id. The plaintiff wrote HSU again on February 14, 2016, asking for something to alleviate the pain. Id. He wrote again on February 24th and February 28th. Id.

The plaintiff wrote to HSU again on March 23, 2016 asking if his surgery was scheduled. Id. at 4. It was not. Id. He wrote again on April 12, 2016 to ask for something to help with the pain. Id. The plaintiff saw Manlove, who "addressed the issue of [the plaintiff's] having pain but did nothing to help with the pain." Id. "At some point" HSU took away the plaintiff's wheelchair, cane and crutches, leaving him to be forced to use and walk on his left leg, causing

3

him pain (and further damage). Id. He alleges that it was Manlove's decision to take these items away. Id. Grossman had told the plaintiff to use the wheelchair, cane and crutches and not to put pressure on his left leg. Id.

The plaintiff alleges that during this five-month timeframe, Manlove refused to provide him with adequate pain medication and delayed scheduling his MRI and surgery. Id. During this time, the plaintiff wrote to defendant Stadmueller, the HSU manager, about what was going on (the court presumes the plaintiff means the lack of pain management and delay in scheduling procedures) and asking her to remedy it. Id. He alleges she did nothing. Id.

In April 2018, the plaintiff injured his left knee again. Id. He alleges that the doctors in Madison gave him a knee immobilizer. Id. They instructed him to wear the immobilizer at all times and to avoid putting weight on his left leg. Id. Upon his return to Waupun (presumably from the offsite doctor's visit), defendant nurse Jennifer Kayden took the immobilizer and refused to allow the plaintiff to have it, despite the outside doctor's (or doctors') orders. Id. The plaintiff wrote to Manlove, who denied his request for his immobilizer. Id. The plaintiff alleges that Manlove refused, and continues to refuse, to give him pain medication, despite continuing severe pain. Id. The plaintiff needs surgery to repair his knee injury. Id. He has been waiting since April to see a surgeon. Id.

The plaintiff alleges that on a date he will provide later, defendant nurse Gwendolyn Vick saw him at his door because his left knee dislocated. Id. She popped it back into place. Id. He alleges nothing was done to provide him with proper medical attention. Id.

4

On or around October 2, 2018, the plaintiff fell in his cell when his left knee dislocated. Id. at 5. He was stuck on the floor for more than two hours; Kayden refused to see him and told him he would have to pop his own knee back into place. Id. He also alleges that he has been scheduled to see Manlove on multiple occasions but has not actually seen him and that he is without pain relief or a treatment plan. Id. The plaintiff alleges that he has contacted the HSU manager, and that defendant Warden Brian Foster has also been made aware of the situation and the fact that his medical need is serious and could result in further injury, yet has refused to step in. Id.

    C.    *The Court's Analysis*

The plaintiff alleges that defendants Manlove, Kayden, Stadtmueller, Marchant (another HSU manager), Vick and Foster violated his Eighth Amendent rights by failing to provide him with the proper medical care for his injured knee. "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (quoting Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009); see also, Estelle v. Gamble, 429 U.S. 97, 103 [1976]). Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. Arnett, 658 F.3d at 750 (citing Estelle, 429 U.S. at 104). A claim based on deficient medical care must demonstrate two elements: 1) that the plaintiff has an objectively serious medical condition; and 2) that the named prison officials were deliberately indifferent to that condition.

5

Arnett, 658 F.3d at 750 (citing Johnson v. Snyder, 444 F.3d 579, 584 [7th Cir. 2006]). "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." Rodriguez, 577 F.3d at 828 (quoting Estelle, 429 U.S. at 104).

The court already has found in its prior order that the plaintiff has alleged a serious medical need—a torn ACL and that he reinjured his left knee, necessitating the use of an immobilizer and refraining from putting pressure on his left leg.

In contrast to the original complaint, the amended complaint connects individual defendants to alleged acts. The plaintiff alleges that despite repeated requests, Manlove refused to provide him with any pain medication or relief, either in 2015-16 or 2018; that Manlove took away his wheelchair, crutches and cane (despite the surgeon having ordered him to use them); that Manlove refused to allow the plaintiff to use his immobilizer; and that he delayed in scheduling the plaintiff's MRI and surgery. These allegations are sufficient to state a deliberate indifference claim against Manlove.

The plaintiff alleges that Kayden deprived him of the use of his immobilizer and refused to provide him treatment when he fell in his cell. These allegations are sufficient to state a claim against Kayden for deliberate indifference.

The plaintiff alleges that at some point—it appears it was after March 2016—he wrote to Stadtmueller, the HSU manager, to tell her "what was going on and have her do something about it but she refused to do so." Dkt. No. 20

6

at 4. This claim is thin—the plaintiff is not clear on when he wrote to Stadtmueller or what he told her about "what was going on," or whether he asked her for specific help. But at this early stage, and construing the plaintiff's complaint liberally, the court will allow him to proceed on a deliberate indifference claim against Stadtmueller.

The court will not allow the plaintiff to proceed against Brian Foster or HSU Manager Marchant. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dept. of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). The plaintiff does not mention Marchant anywhere in the body of his complaint. His conclusory allegation that Foster has been "made aware of the situation" and has refused to step in is not enough to allege that Foster had personal involvement in violating the plaintiff's constitutional rights. Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) (while screening a complaint, a court cannot "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."). Nor will the court allow the plaintiff to proceed against Vick. While he alleges that she came to his cell to pop his knee back into place, he does not allege that she knew that he needed treatment he was not being provided. For a defendant to be deliberately indifferent, she must actually know about the harm. See Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011). The court will dismiss Marchant, Foster and Vick.

## II.  Motion for Preliminary Injunction

On January 4, 2019, the court received a document from the plaintiff titled "Order to Show Cause for A[] Preliminary Injunction." Dkt. No. 21. The plaintiff drafted the document as an order, with spaces for this court to insert a time and date for a hearing and a signature line for the judge. He also filed a declaration, dkt. no. 22, a brief, dkt. no. 23, and a declaration of a fellow inmate, dkt. no. 24.

The court construes this as a motion for a preliminary injunction. In it, the plaintiff cites Federal Rule of Civil Procedure 65(a), the rule that lays out the procedure for a court to use in issuing a preliminary injunction. Dkt. No. 21. He asserts in the motion that he's waited almost ten months for medical treatment, that he's not received adequate pain medication, that his wheelchair has been taken away, that he is in pain, and that the defendants have not gotten him in to see a specialist. Id. He asks the court to stop the defendants from denying him pain medication and stop them from delaying his medical treatment. Id.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." Turnell v. CentiMark Corp., 796 F.3d 656, 661 (7th Cir. 2015) (citing Goodman v. Ill. Dep't of Fin. and Prof'l Regulation, 430 F.3d 423, 437 (7th Cir. 2005)). A district court must conduct a two-step analysis to decide whether to grant such an extraordinary remedy. Id. (citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc., 549 F.3d 1079, 1085-86 (7th Cir. 2008)). First, the party asking for the injunction

must show three things: "(1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." Id. (citing Girl Scouts of Manitou, 549 F.3d at 1086). If the person asking for the injunction makes that threshold showing, the court moves on to the second step, in which it considers "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the 'public interest')." Id.

Rule 65(a)(1), which the plaintiff cites in his motion, provides that a court may issue a preliminary injunction "only on notice to the adverse party." Here, the "adverse parties"—Manlove, Kayden and Stadtmueller—have not received notice of the plaintiff's motion, because the court had not yet screened the complaint and ordered it served on them. The court will not schedule a hearing until the defendants have learned about the fact that the plaintiff has sued them. It will give them an opportunity to respond to the plaintiff's motion within twenty-one (21) days of the date the court issues this order.

### III. Conclusion

The court **ORDERS** that defendants HSU Manager Marchant, Warden Brian Foster, and Gwendolyn Vick are **DISMISSED** from this lawsuit.

Under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order will

9

be electronically transmitted to the Wisconsin Department of Justice for service on defendants Dr. Jeffrey Manlove, Jennifer Kayden and HSU Manager Stadmueller. The court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court further **ORDERS** that within **twenty-one (21) days** of the date the court issues this order, the defendants shall respond to the plaintiff's motion for injunctive relief. Dkt. No. 21.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for all pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 14th day of January, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**